Thomas Leroy **JOHNSTON,**
Petitioner-Appellant,

v.

John **MAKOWSKI,** Warden of Conners Correctional Center, and Michael C. Turpen, Attorney General of the State of Oklahoma, Respondents-Appellees.

No. 86–1751.

United States Court of Appeals,
Tenth Circuit.

July 7, 1987.

Harry A. Woods, Jr., and Crowe & Dunlevy, Oklahoma City, Okl., for petitioner-appellant.

John Galowitch, Asst. Atty. Gen., State of Oklahoma (Michael C. Turpen, Atty. Gen., and Daman H. Cantrell, Asst. Atty. Gen., with him on the brief), for respondents-appellees.

* Honorable William H. Timbers, U.S. Court of Appeals, Second Circuit, sitting by designation.

Before ANDERSON, TACHA and TIMBERS*, Circuit Judges.

TIMBERS, Circuit Judge.

Appellant Thomas Leroy Johnston ("appellant") appeals from a judgment entered April 14, 1986, in the Western District of Oklahoma, David L. Russell, District Judge, which denied appellant's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). Appellant is a prisoner of the State of Oklahoma, having been convicted after a jury trial of rape, oral sodomy, and kidnapping for the purpose of extorting sexual gratification. He is serving concurrent prison sentences of 50 years on each count.

On appeal, appellant claims, as he did in the district court, that the jury's consideration of a police report which was not admitted in evidence violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; and that the Oklahoma trial court violated his due process rights by permitting an in-court identification which he asserts was tainted by a prior impermissibly suggestive photographic identification.

We hold that, upon the facts as found by the Oklahoma trial court, to which we defer, appellant's rights were not violated by the presence of the police report in the jury room during deliberations. We further hold that, although the photographic identification was impermissibly suggestive, under the totality of the circumstances appellant's due process rights were not violated.

We affirm.

I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

On the evening of October 9, 1981, Theresa Robinson, then seventeen years of age, left her place of employment in Midwest City, Oklahoma, and walked to the parking lot. As she entered her car, a man approached her. Outside her car he spoke with her for approximately ten minutes,

attempting to convince her to accompany him to a bar. When she turned away from the man to drive away, she felt a sharp instrument on the back of her neck. The man forced his way into her car and drove to a secluded area, where he sodomized and raped her. He then fled on foot.

Robinson drove immediately to the Midwest City police station to report the rape. She gave an identification of her attacker, stating that he was approximately 27 years old, about six feet tall, with dark brown hair and hazel eyes. A composite drawing of the attacker was made by the police that evening. She described to the police with particularity the shoes her assailant was wearing and returned later with a newspaper advertisement depicting similar shoes.

One week after the incident Robinson was shown a photo array which did not contain a picture of appellant. Robinson did not identify her attacker from the array.

Some time in the latter part of October, the investigating officer—Detective Ted Askew—was told by a fellow officer that appellant was in custody as a suspect in another rape case. Detective Askew went to speak with appellant and, during interrogation, took a photo of him and seized his distinctive shoes. Askew then made another photo array, which consisted of several old pictures and the newly taken one of appellant.

Robinson viewed the new array in early November. She identified appellant as her assailant, on the basis of the second photo array and at a subsequent lineup.

On November 9, 1981, appellant was charged in an information filed in the Oklahoma state trial court with the crimes of first degree rape, oral sodomy, and kidnapping for the purpose of extorting sexual gratification.

On December 7, 1981, at a preliminary hearing on the information, Robinson testified that Detective Askew had told her *before* showing her the second photo array that the police had a suspect in custody and had just taken his picture. She testified further that she had taken this into account when she identified appellant from the array and that otherwise she would have been unsure that the photo was of her assailant.

Appellant was tried during the period July 16–18, 1982. Robinson's testimony at trial differed from her testimony at the preliminary hearing. She testified at trial that Detective Askew had told her—*after* she had identified appellant from the second photo array—that the police had him in custody and that he was a suspect and that she had been confused at the preliminary hearing. She testified further that she was able to identify appellant as her assailant and did not need the photo to identify him.

After the court's charge, the jury retired to deliberate. The court reporter and bailiff gathered approximately 80 exhibits and delivered them to the jury room. Inadvertently included in the material delivered was a defense exhibit which had been marked for identification only but had not been received in evidence. The exhibit was a police report which had been prepared by Detective Askew and which defense counsel had used during cross examination. On page two of the three page report there was a statement that "[i]t was brought to Det. Askew's attention by Det. K. Anderson that she was preparing to file charges on the above suspect [appellant] for attempted rape." The attempted rape charge referred to in the report was unrelated to the rape of Robinson and was not brought to the jury's attention.

The jury returned verdicts of guilty on each of the three counts and fixed punishment at 99 years on each count.

Appellant filed a motion in the state trial court for a new trial and for a hearing concerning the presence of the police report in the jury room. On March 24, 1982, the court held an evidentiary hearing on the motion. The court heard testimony from the court reporter, the bailiff, the jury foreman—Robert P. Valleroy—and another juror—William G. Cochran. Valleroy testified that he was absolutely certain that the police report had not been discussed until after the verdict on the rape count had been reached. He stated that the re-

port therefore had no bearing whatever on the rape conviction. He testified further that he was 99% certain that the report had no bearing on the verdict as to the sodomy and kidnapping counts. Cochran testified that no mention of the report was made in the jury room until that part of the deliberations concerning sentencing.

At the conclusion of the hearing, the trial judge found that the jury had received the exhibit improperly but had not considered it until the sentencing part of the deliberations. The court therefore granted appellant's motion for a new trial as to sentencing only. After a new trial as to sentencing, the new jury fixed appellant's sentence at 50 years on each count, to run concurrently.

The Oklahoma Court of Criminal Appeals affirmed appellant's convictions. *Johnston v. State*, 673 P.2d 844 (Okla.Cr.1983). Relying on *Edwards v. State*, 637 P.2d 886 (Okla.Cr.1981), the Court of Criminal Appeals held that the applicable inquiry was whether there was a "reasonable possibility" that prejudice could have resulted from the jury's examination of the police report. The court reviewed the testimony of the two jurors and concluded that the trial judge had rectified any possible harm by ordering a new trial as to sentencing. The court also rejected appellant's claim that the second photo array was so impermissibly suggestive as to taint the subsequent in-court identification. The court followed the guidelines set forth in *United States v. Wade*, 388 U.S. 218 (1967), and determined that, under the totality of the circumstances, the identification of appellant was reliable.

On February 23, 1984, appellant filed in the United States Supreme Court a petition for certiorari which was denied June 4, 1984. *Johnston v. Oklahoma*, 467 U.S. 1228 (1984).

Appellant filed the instant habeas petition on August 23, 1985. He raised the same claims as were addressed by the Oklahoma courts and which are before us on the instant appeal. The district court denied the petition in an opinion filed April 14, 1986. Judgment was entered the same day. By an order entered April 23, 1986, the district court granted appellant's application for a certificate of probable cause. This appeal followed.

For the reasons set forth below, we affirm the judgment of the district court.

## II.

### A. *The Police Report*

Courts have applied varying legal standards to determine whether the jury's use of or exposure to extrinsic material requires a new trial. *E.g., United States v. Griffith*, 756 F.2d 1244, 1252 (6th Cir.) (trial judge should determine whether jury actually used material and whether there was prejudice to the defendant; trial court's decision will be reviewed under abuse of discretion standard), *cert. denied*, 106 S.Ct. 114 (1985); *United States v. Camporeale*, 515 F.2d 184, 188 (2d Cir. 1975) ("evidence was so prejudicial that the defendant was denied a fair trial"); *United States v. Howard*, 506 F.2d 865, 869 (5th Cir.1975) (new trial required if there is a "reasonable possibility" that the defendant was prejudiced); *United States v. Marx*, 485 F.2d 1179, 1184 (10th Cir.1973) ("if there is the slightest possibility that harm could have resulted from the jury's viewing of unadmitted evidence, then reversal is mandatory."), *cert. denied*, 416 U.S. 986 (1974); *Edwards, supra*, 637 P.2d at 887 ("reasonable possibility" standard).

In the instant case, neither the Oklahoma Court of Criminal Appeals nor the district court applied the "slightest possibility" standard set forth by our Court in *Marx, supra*, 485 F.2d at 1184. Rather, the Oklahoma court followed the "reasonable possibility" standard of *Howard, supra*, 506 F.2d at 869, and *Edwards, supra*, 637 P.2d at 887. The district court applied the "so prejudicial" standard of the Second Circuit in *Camporeale, supra*, 515 F.2d at 188.

We agree with appellant that the applicable standard in this Circuit is the "slightest possibility" standard of *Marx.* We hold, however, that, under any standard, appellant's claim fails. The state trial court found that the police report was

not used until the sentencing part of the jury deliberations. Absent the applicability of one of the exceptions listed in 28 U.S.C. § 2254(d) (1982), that finding of fact must be accorded the presumption of correctness. *Kuhlmann v. Wilson*, 106 S.Ct. 2616, 2630 (1986); *Sumner v. Mata*, 449 U.S. 539, 547 (1981). Appellant has advanced no persuasive argument that any of those exceptions apply. We therefore accept the correctness of the state trial court's finding that the jury did not consider the police report during the determination of guilt phase of the jury deliberations. Any conceivable prejudice was cured by the new trial as to sentencing. It is clear that appellant's claim fails even under the stringent standard of *Marx*.

Accordingly, we hold that, upon the facts as found by the Oklahoma trial court, to which we defer, appellant's rights were not violated by the presence of the police report in the jury room during deliberations.

## B. *The Photo Array*

■ The inquiry required by the due process clause when an identification procedure is challenged is two pronged: first, it must be determined whether the identification procedure was impermissibly suggestive; and, second, if it is found to have been so, whether the identification nevertheless was reliable in view of the totality of the circumstances. *See Simmons v. United States*, 390 U.S. 377, 384 (1968). The two prongs of the inquiry should be made separately; it is necessary to reach the second prong only if the procedure was impermissibly suggestive. In reaching its conclusion that the identification did not violate appellant's rights, the Oklahoma Court of Criminal Appeals did not consider the two prongs separately, but examined the totality of the circumstances to determine whether the procedure was impermissibly suggestive. We have examined the two prongs of the inquiry separately.

■ We believe that the second photo array was impermissibly suggestive since appellant's picture obviously was newly taken, whereas the other pictures were visibly older. Appellant's claim nevertheless fails. Under the totality of the circumstances, the identification of appellant clearly was reliable. The factors that we have considered in determining the reliability of the identification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [her] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Appellant spoke with Robinson for approximately ten minutes before abducting her. In total, appellant was in her view for 45 minutes. She testified that, although the parking lot was not lit, she could see his face because of the moonlight and the overhead light in her car. She gave a description of him immediately after the crimes had been committed. That description was very close to appellant's actual appearance. Robinson described his unique shoes and supplied the police with a newspaper advertisement depicting a similar pair.

Moreover, the state appellate court had before it the composite drawing made on the night of the rape and commented on its likeness to appellant. The court also had the photo array and line-up pictures. Based on a review of them, the court declined to find such improper suggestiveness as to exclude the subsequent in-court identification. The ultimate conclusion of that court is supported fully by the record.

We hold that, although the photographic identification was impermissibly suggestive, under the totality of the circumstances appellant's due process rights were not violated.

### III.

To summarize:

We hold that, upon the facts as found by the Oklahoma trial court, to which we defer, appellant's rights were not violated by the presence of the police report in the jury

room during deliberations. We further hold that, although the photographic identification was impermissibly suggestive, under the totality of the circumstances appellant's due process rights were not violated. The district court therefore correctly denied appellant's petition for a writ of habeas corpus.

AFFIRMED.